HAEFNER v BAYMAN

Docket No. 95398. Submitted November 12, 1987, at Detroit. Decided
    January 4, 1988.

   Carol L. Haefner petitioned in the Oakland Circuit Court for an
      increase in child support payments. Respondent, Scott R. Bay-
      man, who is not a resident of Michigan, was personally served
      with the petition while in Michigan. The parties were married
      in Ohio and were divorced by order of the Trumbull County,
      Ohio, Common Pleas Court. Petitioner subsequently moved to
      Michigan and respondent moved to Connecticut. Respondent
      moved for summary disposition, alleging lack of personal juris-
      diction. The trial court, Norman Lippitt, J., denied the motion.
      The court thereafter granted the petition in part, ordering
      respondent to pay $750 per month for his daughter until she
      reaches eighteen or graduates from high school, whichever
      shall last occur. Respondent appealed from the orders denying
      his motion for summary disposition and granting, in part, the
      petition to modify child support.

      The Court of Appeals *held:*

      1. The circuit court did have personal jurisdiction over re-
      spondent.

      2. Petitioner showed a sufficient change in circumstances to
      warrant an increase in child support for the daughter. The
      increase in the cost of living, along with the daughter's age and
      social development, are changes in circumstances warranting
      an increase. Petitioner's eighty percent ratio for determining
      an appropriate increase is a reasonable measure, since respon-
      dent makes eighty percent of the parties' combined income.

      3. Some of the expenses which the petitioner attributed to
      the daughter are unreasonable. No part of petitioner's house

REFERENCES

Am Jur 2d, Divorce and Separation §§ 233, 1020, 1021, 1035-1043,
    1056-1077.
Change in financial condition or needs of parents or children as
    ground for modification of decree for child support payments. 89
    ALR2d 7.
Necessity of personal service within state upon nonresident spouse
    as prerequisite of court's power to modify its decree as to alimony
    or child support in matrimonial action. 62 ALR2d 544.

payment, taxes, or insurance should be attributable to the daughter, as these expenses would be incurred even if the daughter did not live with petitioner. One-quarter of the electricity, gas, and telephone were properly attributed to the daughter, as these expenses increase because of the daughter's presence in the house.

4. $554.72 per month child support for the daughter is a fair amount considering the daughter's needs and respondent's ability to pay.

The trial court's decision is modified in accordance with this opinion.

1. Courts — Jurisdiction — Presence in State.

An individual's presence in the state at the time when process is served on him constitutes a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the individual or his representative and to enable such courts to render personal judgments against the individual or representative (MCL 600.701[1]; MSA 27A.701[1]).

2. Parent and Child — Child Support — Modification of Support Order.

A trial court has the power to modify child support orders if the petitioning party is able to show changed circumstances sufficient to justify the modification; all relevant factors are considered in determining if there has been a sufficient change; the modification is in the trial court's discretion and its decision will not be disturbed absent a clear abuse of discretion; appellate review is de novo, but the Court of Appeals gives grave consideration to the trial court's findings and will not reverse unless it is convinced it would have reached a different result had it been in the trial court's position.

3. Parent and Child — Child Support — Modification of Support Order.

An increase in child support may be made based on the child's needs and the parties' ability to pay; it is proper to consider the supporting parent's new familial obligations.

4. Parent and Child — Child Support.

Child support payments are not considered the property of the custodial parent and are solely for the benefit of the child; support is measured by the needs of the child independent of the needs of the custodial parent.

*Butzel, Long, Gust, Klein & Van Zile* (by *Gregory V. Murray*), for petitioner.

*Colista, Urso, Adams & Dettmer, P.C.* (by *Dennis A. Dettmer*), for respondent.

Before: HOOD, P.J., and R. M. MAHER and J. B. SULLIVAN, JJ.

PER CURIAM. In this action to modify child support, respondent appeals as of right from the May 21, 1986, order denying his motion for summary disposition and the September 2, 1986, order granting in part and denying in part a petition to modify child support, both entered by the Oakland Circuit Court.

The parties were married on October 14, 1967, in Warren, Ohio. Two children were born to the parties, C. Richard Bayman (hereinafter Richard), born March 21, 1968, and Brandy L. Bayman, born May 2, 1972. The parties were divorced by order of the Trumbull County, Ohio, Common Pleas Court on September 29, 1978; the order was entered November 13, 1978. Under the decree, which incorporated the parties' separation agreement, the parties were to have joint legal custody and the children were to reside with each parent as much as possible, but were to reside at petitioner's home during the school year. It was agreed that respondent was not to pay any support, but he agreed to pay for the college education of the children. Petitioner subsequently moved to Birmingham, Michigan, and respondent moved to Hartford, Connecticut.

In December, 1979, the parties amended their separation agreement to give petitioner sole custody of the children and to provide that respondent pay child support of $175 per month per child, beginning in January, 1980. Respondent

subsequently voluntarily paid each child an additional $25 per month spending money. He gave this money to the children directly, rather than through the Friend of the Court.

On May 2, 1985, the children's mother filed a petition for an increase in child support in Oakland Circuit Court. Petitioner alleged that the court had personal jurisdiction over respondent because he was served in Michigan and that, due to a change in circumstances, child support should be increased to $1,000 per month per child. Respondent was personally served with the petition at the Hyatt Regency Hotel in Dearborn, Michigan, while he was in Michigan on business. On April 24, 1986, respondent filed a motion for summary disposition pursuant to MCR 2.116(C)(1), lack of personal jurisdiction. This motion was denied following a brief hearing on May 21, 1986.

A hearing on the petition for an increase in child support was held August 13, 1986. By this time, Richard was already eighteen years old, and Brandy was fourteen. Both parties had remarried, and respondent had a new baby. On September 2, 1986, the court granted the petition in part, ordering respondent to pay $750 per month for Brandy until she reached eighteen.

On appeal, respondent first claims that the Oakland Circuit Court did not have personal jurisdiction. We disagree. MCL 600.701(1); MSA 27A.701(1) states:

> The existence of any of the following relationships between an individual and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the individual or his representative and to enable such courts to render personal judgments against the individual or representative.

(1) Presence in the state at the time when process is served.

In *Fitzwater v Fitzwater,* 97 Mich App 92; 294 NW2d 249 (1980), this Court held that a Michigan trial court did not have personal jurisdiction over the defendant father in an action to modify child support where he was served in Texas and had no contact at all with Michigan. *Fitzwater, supra,* pp 93, 100. However, this Court noted in a footnote that, had the respondent been served while present in Michigan, personal jurisdiction would have been obtained under MCL 600.701; MSA 27A.701. *Id.,* p 98, n 3. Respondent in the instant case attempts to distinguish this footnote by stating that it applies only to fugitives, but the fact that the defendant in *Fitzwater* was characterized as a fugitive was irrelevant. Because respondent in the instant case was personally served in Dearborn, Michigan, the court had personal jurisdiction.

Next, respondent claims that the court erred in awarding petitioner $750 per month in child support for Brandy. We agree that this amount is excessive considering Brandy's needs, and modify the order accordingly.

Initially, we note that we disagree with respondent's contention that the court considered only his increase in income in increasing Brandy's support. On the contrary, the court stated that along with respondent's increased income, it was basing the award on the prospect of respondent's receiving a bonus, the fact that respondent is putting money into a savings plan at work, the fact that petitioner earns considerably less than respondent, and the fact that petitioner has to raise Brandy, a teenager. The court considered many factors besides respondent's increased income.

At the hearing on August 13, 1986, respondent

testified that in 1978, when the parties received their divorce, his gross salary was $36,225. In 1985, his salary was $85,000 and, in addition, he received a bonus of $28,000. In 1986, his salary was to be $90,000. However, a bonus is not guaranteed for 1986, as it is contingent on company and employee performance. At the time of the divorce, he and petitioner agreed that he would not be required to pay support in exchange for his agreement to pay for the childrens' college education. At the time of the hearing, his weekly expenses were $1,189.38 and his weekly net income was $1,090. Therefore, he had a weekly deficit of approximately $100. To cover the deficit, he had taken out a loan and dipped into his savings. Richard moved in with him in June, 1986, for the summer before he was to start at the University of Connecticut. Richard had since left for campus, as he was involved in soccer. Respondent has to pay $10,320 per year for Richard's college tuition, room and board. Respondent had remarried at the time of the hearing, and he and his wife have a five-month-old baby.

Upon cross-examination, respondent acknowledged that $225 of his pay per pay period was being put into an employee's savings plan at his place of employment. However, because of taxes, he only gets sixty percent of the $225. He acknowledged that this money could go towards his expenses.

Petitioner testified that at the time of the divorce she earned $15,595 as a free-lance photographer's assistant. In 1985, her salary inceased to $19,483, and she expected it to be the same in 1986. She testified that her earnings in 1986 will not be enough to pay for Brandy's expenses. Petitioner had remarried, and her new husband contributes "a great deal." They have moved twice

since they got married, and they moved into their most recent home because they needed more space for the children.

Petitioner submitted a list of expenses incurred on behalf of Richard and Brandy for the period of June 1, 1985, to May 31, 1986. Because both Richard and Brandy were living at home during that period, the totals for the first seven items (house payment, electricity, gas and oil, telephone, taxes, insurance and food) were divided by two. The rest of the expenses (transportation, clothing, medical, recreation, school, vacations, and child care) were not prorated as they were directly attributable to the children. All the expenses totalled $27,229 yearly, or $2,269 monthly.

Petitioner also submitted a list of expenses for Brandy alone. This list contained the same items. On this list, she divided the first seven items by four. The total annual expenses attributable to Brandy was $12,492. The monthly expenses attributable to Brandy were $1,041.

At the end of the hearing, counsel for petitioner requested a lump sum of $18,898 (eighty percent of the expenses of both children retroactive to the date of the filing of the petition, less credit for the support already paid for the period) plus $832 per month for Brandy (eighty percent of the monthly expenses attributable to Brandy) from the date of the hearing forward. Counsel for respondent stated that retroactive support for Richard should not be awarded because it was not requested in the petition, and that respondent should not be required to pay any increase at all for Brandy because he has to pay for the childrens' college educations to the tune of $8,000 to $10,000 per year per child for the following eight years.

The court denied petitioner's request for retroactive child support for Richard, but granted peti-

tioner's request for an increase in child support for Brandy, awarding petitioner $750 per month. The court did not specifically state how it arrived at the $750 figure.

The standard of review of a court's modification of child support is succinctly stated in *Wells v Wells,* 144 Mich App 722, 733-734; 375 NW2d 800 (1985):

> A trial court has the power to modify child support orders if the petitioning party is able to show changed circumstances sufficient to justify the modification. All relevant factors must be considered in determining if there has been a sufficient change. The modification is in the trial court's discretion and its decision will not be disturbed absent a clear abuse of discretion. Appellate review is *de novo,* but this Court gives "grave consideration" to the trial court's findings and will not reverse unless it is convinced it would have reached a different result had it been in the trial court's position. *Jacobs v Jacobs,* 118 Mich App 16, 20; 324 NW2d 519 (1982).

A trial court has the statutory power to modify orders for child support upon a showing by the petitioning party of a change in circumstances sufficient to justify modification. MCL 552.17; MSA 25.97; *Jacobs v Jacobs,* 118 Mich App 16, 20; 324 NW2d 519 (1982). An increase in child support may be made based on the child's needs and the parties' ability to pay. *Cochran v Buffone,* 137 Mich App 761, 767-768; 359 NW2d 557 (1984). Child support payments are not considered the property of the custodial parent and are solely for the benefit of the child. Support is measured by the needs of the child independent of the needs of the custodial parent. *Copeland v Copeland,* 109 Mich 683, 685; 311 NW2d 452 (1981). It is proper for the court to consider the supporting parent's

new familial obligations. *Schneider v Schneider,* 30 Mich App 124; 186 NW2d 17 (1971); *Jacobs, supra,* pp 21-22.

We believe that petitioner has shown a sufficient change in circumstances to warrant an increase in child support for Brandy. The increase in the cost of living since 1979, along with Brandy's age and social development, are changes in circumstances warranting an increase. *Kalter v Kalter,* 155 Mich App 99, 102; 399 NW2d 455 (1986), lv den 428 Mich 862 (1987). We also believe that petitioner's eighty percent ratio for determining an appropriate increase is a reasonable measure, since respondent makes eighty percent of the parties' combined income.

However, we believe that some of the expenses which petitioner attributed to Brandy are unreasonable. In *Kalter, supra,* the petitioner also added up all the household expenses and divided by two to get the amount attributable to the child. This Court held that it was improper to consider half of the mother's expenses for her car, condominium, utilities, and insurance as being attributable to the child. This Court stated:

> It is improper to consider for the purpose of setting child support one-half of the petitioner mother's expenses for her car, condominium, utilities and insurance to be money spent on behalf of her son. Some of those living expenses may be increased somewhat by him, but she would have the bulk of those expenses without him. A portion of her mortgage payment is an investment. The needs of the boy, realistically shown by the petitioner's testimony, are adequately met by support payments from the father of $155 per week which total $8,060 annually. [*Kalter, supra,* p 103.]

Based on *Kalter,* we believe that no part of

petitioner's house payment, taxes, or insurance should be attributable to Brandy. These expenses would be incurred even if Brandy did not live with petitioner. However, unlike *Kalter,* we believe that one-quarter of the electricity, gas, and telephone were properly attributed to Brandy, as these expenses naturally increase because of Brandy's presence in the house. When the house payment, taxes, and insurance are eliminated from the list of expenses attributable to Brandy, the total estimated annual expenses attributable to Brandy are $8,321, and the monthly expenses attributable to her are $693.41. Respondent should be required to pay eighty percent of this amount, or $554.72 per month. We feel this is a fair amount considering all of the circumstances. Respondent has a new wife and baby, which are new familial obligations we are required to consider. In addition, respondent has paid the required $175 per month for Richard and Brandy all along, and has added an extra $25 per month for each of them for spending money. He also is required to pay the childrens' college expenses. We believe $554.72 is a fair amount considering Brandy's needs and respondent's ability to pay. This Court has authority to modify the amount of child support awarded by the trial court. *Vaclav v Vaclav,* 96 Mich App 584, 589; 293 NW2d 613 (1980).

The decision of the trial court is modified in accordance with this opinion.