## DORFMAN v GODLOVE

Docket Nos. 138948, 140385. Submitted March 4, 1993, at Grand Rapids. Decided July 6, 1993, at 9:10 A.M.

Shirley Dorfman and Marlin J. Godlove were granted a judgment of divorce in the Iosco Circuit Court in 1983. Godlove was ordered to pay monthly child support and maintain medical, hospitalization, and dental insurance adequate to protect the parties' two minor children. He began making payments in excess of his child support obligation, and the friend of the court recorded the excess payments as credits to his account. On November 8, 1988, Dorfman moved for an increase in child support, which the court subsequently granted retroactive to November 8, 1988, with the provision all arrearages and credits were to be preserved. Godlove began paying less support than ordered, gradually reducing the credit. Following the Court of Appeals decision in *Pellar v Pellar*, 178 Mich App 29 (1989), which stated voluntary overpayments of child support could not be applied to create a credit against or diminish the amount of the obligor's court-ordered support obligation, Dorfman moved to prevent Godlove from crediting his current support obligation with prior overpayments. Godlove moved to obtain a credit toward his child support obligation for monies he paid in orthodontic expenses for one of the children. The court, J. Richard Ernst, J., held Godlove was not entitled to credit for voluntary overpayment of child support made after November 8, 1988, or for the orthodontic expenses. Although the application of these findings placed Godlove in arrears on his child support obligation, the court ruled Dorfman could not enforce the arrearage until Godlove's support obligation for the younger child terminated. Both parties appealed, and the appeals were consolidated.

The Court of Appeals *held:*

1. The court erred in establishing November 8, 1988, as the

REFERENCES

Am Jur 2d, Divorce and Separation § 1077.

Right to credit on accrued support payments for time child is in father's custody or for other voluntary expenditures. 47 ALR3d 1031.

date from which Godlove's overpayments could not be used to offset his current support obligation. The prohibition against prepaying support obligations contained in *Pellar* is given only prospective application from July 5, 1989, its decision date. The case must be remanded to the trial court for recalculation of the arrearage from July 5, 1989.

2. The trial court's findings with regard to the orthodontic expenses are supported adequately by the record. That portion of the trial court's order must be affirmed.

3. The trial court erred in ordering that action with respect to Godlove's arrearages be held in abeyance until his support obligation for the younger child terminated. That portion of the trial court's order must be reversed.

Affirmed in part, reversed in part, and remanded.

FITZGERALD, J., concurring in part and dissenting in part, stated that *Pellar* was decided incorrectly. The *Pellar* Court's rationale for denying credit, to insure that minor children receive regular, uninterrupted income, does not apply where, as in *Pellar* and this case, support payments are made to the friend of the court, which pays the custodial parent the scheduled amount and holds any remainder in escrow. Godlove should be given a child support credit in the amount paid in excess of his court-ordered obligations.

DIVORCE — CHILD SUPPORT — CREDIT FOR VOLUNTARY OVERPAYMENTS.
 The prohibition stated in *Pellar v Pellar,* 178 Mich App 29 (1989), that voluntary overpayments of child support cannot be applied to create a credit against or diminish the amount of an obligor's court-ordered child support obligation, applies only prospectively from the July 5, 1989, date of decision.

*Terry R. Ekdahl,* for Marlin J. Godlove.

Shirley Dorfman, in propria persona.

Before: McDONALD, P.J., and REILLY and FITZGERALD, JJ.

McDONALD, P.J. Both parties appeal from an April 15, 1991, order regarding defendant's child support obligations. We affirm in part and reverse in part.

Pursuant to the parties' 1983 judgment of divorce, defendant was ordered to pay monthly child

support of $250 ($125 for each of his two minor children) and to maintain medical, hospitalization, and dental insurance adequate to protect the minor children. On or about October 28, 1983, defendant voluntarily began making monthly payments of $300. The friend of the court recorded the excess payments as credits to defendant's account. On November 8, 1988, plaintiff filed a motion to modify the judgment of divorce and increase defendant's support obligation. Following a hearing, the court entered a February 13, 1989, order increasing defendant's child support obligation to $63.50 a week for each child. The order provided the child support was retroactive to November 8, 1988, the date plaintiff filed her motion, and that all arrearages and credits were to be preserved.

After entry of the order, defendant began paying child support of $425 a month rather than the court-ordered amount of approximately $550 a month. Payment of the reduced amount gradually reduced the credit previously recorded in defendant's account. On September 26, 1989, following this Court's release of *Pellar v Pellar,* 178 Mich App 29; 443 NW2d 427 (1989), plaintiff moved to prevent defendant from "crediting" his current support obligation with prior overpayments. The *Pellar* opinion stated that voluntary overpayments of child support could not be applied to create a credit against or diminish the amount of the obligor's court-ordered support obligation. Before there was a decision on plaintiff's motion, defendant petitioned the court to obtain a $2,646 credit toward his child support obligation for monies he paid in orthodontic expenses. Both motions were heard on January 9, 1991. The court held defendant was not entitled to a credit for his voluntary overpayment of child support, finding the parties did not agree on the effect of the overpayments

and that there were no equitable considerations present to merit a different result. The court established November 8, 1988, the date plaintiff filed her motion to increase support, as the date from which defendant could not credit his account with voluntary overpayments. The court also held defendant was not entitled to credit for monies expended on orthodontic bills because the language in the judgment of divorce was broad enough to include the requirement that defendant provide adequate insurance to cover the orthodontic services at issue. Although the application of these findings placed defendant in arrears on his child support obligation, the court ruled plaintiff could not enforce the arrearage until defendant's support obligation for the younger child terminated. The trial court's holdings were eventually embodied in the April 15, 1991, order from which both parties now appeal.

On appeal, defendant first contends the court erred in establishing November 8, 1988, as the date from which defendant's overpayments could not be used to offset his current support obligation. We agree.

*Pellar,* a case of first impression, was not decided until July 5, 1989. Before *Pellar's* release, overpayments of child support were regularly treated as prepayments or credits to current support obligations. Retroactive application of the decision would have a severe effect on friend of the court offices responsible for maintaining obligors' support accounts, as well as on individual obligors who may have managed their financial affairs in substantial reliance on the practice of prepaying their support obligations. We therefore afford the prohibition against prepaying support obligations contained in *Pellar* prospective application. Accordingly, we find the instant trial court erred in

calculating defendant's arrearage on the basis of a prepayment cutoff date of November 8, 1988, rather than July 5, 1989, the date *Pellar* was decided. On remand, defendant's arrearage should be recalculated utilizing the later date.

We find no merit to defendant's remaining claim that his support obligation should be reduced by the amount he paid for certain orthodontic services provided to his younger child. The trial court's findings regarding this issue are adequately supported by the record, and defendant has failed to provide any authority or adequate argument to support his position. *In re Toler,* 193 Mich App 474; 484 NW2d 672 (1992).

Plaintiff raises one issue on appeal. Plaintiff contends the court erred in ordering that action on defendant's arrearages be held in abeyance until defendant's support obligation for the younger child terminated. We agree.

Although it is obvious the court was attempting to temper the harsh effect of the "*Pellar*" rule to the facts of this case, the court provided no authority or reasoning to support the imposition of such a unique prohibition. We find the court's prohibition against the enforcement of defendant's arrearage to be contrary to the policies underlying a parent's child support obligation as set forth in *Pellar, supra.* We therefore reverse that portion of the April 15, 1991, order that prevents plaintiff from instituting action upon defendant's arrearage. We also remand for redetermination of the amount of defendant's arrearage as previously set forth in this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

REILLY, J., concurred.

FITZGERALD, J. *(concurring in part and dissenting in part).* I disagree with the majority's position because I believe *Pellar v Pellar,* 178 Mich App 29; 443 NW2d 427 (1989), was wrongly decided. In that case, this Court held that voluntary child support overpayments do not create a credit against the obligor's subsequent court-ordered obligations. In imposing that rule, this Court sought to prevent obligors from building up a substantial credit and then suddenly refusing to make subsequent scheduled payments contrary to the custodial parent's expectations. The rationale for denying a credit in such instances is to insure that the minor children receive "regular, uninterrupted income . . . ." *Id.* at 34.

However, where, as in *Pellar* and also in this case, the support payments are made to the friend of the court, there is no risk of interruption of support payments to the custodial parent should the obligor unilaterally cease making scheduled payments. If the obligor has made previous payments in excess of the court-ordered obligation, the friend of the court would, nonetheless, continue to pay the custodial parent only the scheduled amounts as ordered by the court, with the remainder held in escrow. Thus, the custodial parent would continue to receive regularly scheduled payments from the friend of the court until the surplus was exhausted.

In my view, conscientious and responsible fathers who pay their child support in advance should be commended, not penalized. Furthermore, considering the sophisticated accounting technology in use by the friend of the court offices, the crediting of excess child support payments should not overburden their staffs. Accordingly, I would hold that plaintiff is entitled to a child support credit in the amount paid in excess of his court-ordered obligations.